UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **GB & JB PROPERTIES, LLC,** § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | PE-24-CV-00058-DF |
| § | | |
| **CENTURY SURETY CO.,** § | | |
| *Defendant*. § | | |

### ORDER GRANTING MOTION TO REMAND

BEFORE THE COURT is Plaintiff GB & JB Properties, LLC's ("GB & JB") Opposed Motion to Remand. (Docs. 3). This matter is before the Court by consent of the parties. (Docs. 6, 7, 8). Upon careful review of the motions and relevant law, the Court finds the Motion to Remand well taken and, therefore, **GRANTS** the Motion. (Doc. 3).

#### BACKGROUND AND PROCEDURAL HISTORY

**I.  Background**

GB & JB owns properties located in Fort Stockton, Texas. (Doc. 1-1 at 3). These properties were covered for property damage under an insurance policy issued by Century. *Id.* The policy insured the properties and their contents against loss by hail, wind, and water. *Id.* On October 10, 2022, the properties sustained hail and storm-related damage. *Id.* GB & JB made an insurance claim with Century to recover for the damage and losses the storm caused to the properties. *Id.* Following an investigation into the nature of the damage, Century determined the policy did not cover the damage to the properties, and it denied the claim for recovery. *Id.*

1

Based on Century's denial, GB & JB filed suit on April 16, 2024, in Texas state court alleging breach of contract under the Texas Insurance Code.[1] *Id.* at 2-8. GB & JB sought "monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs." *Id.* at 4.

## II.    Procedural History

On December 13, 2024, Century filed a Notice of Removal to federal court. (Doc. 1). On January 13, 2025, GB & JB moved to remand based on Century's untimely Notice of Removal. (Doc. 3). Century responds that its Notice was timely under 28 U.S.C. § 1446(b)(3). (Doc. 9). Both parties agree that this matter is properly before this Court pursuant to 28 U.S.C. § 1332(a)(1) — that is, there is complete diversity of citizenship.[2] (Docs. 1 at 2; 3 at 1).

---

1. The lawsuit was filed in the District Court for the 112th Judicial District, Pecos County, Texas, styled *GB & JB Properties, LLC v. Century Surety Co.*, Cause No. P-13104-112-CV. (Doc. 3 at 3).

2. Federal district courts have jurisdiction of civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). GB & JB is a limited liability company. Its sole member is Antoneta Espinoza, a citizen of the State of Texas. (Doc. 3 at 5). The citizenship of a limited liability company is determined based on the citizenship of all its members. *See MidCap Media Fin. LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019). Thus, for purposes of diversity of citizenship, GB & JB's citizenship is in the State of Texas. *See Harvey v. Gray Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (explaining for purposes of diversity jurisdiction, "the citizenship of an LLC is determined by the citizenship of all of its members").

   Century is incorporated in the State of Ohio with its principal place of business in Michigan. (Doc. 1 at 4). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "[A]llegations regarding the citizenship of a corporation must set out the principal place of business of the corporation as well as the state of its incorporation." *MidCap Media*, 929 F.3d at 314 (quoting *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985)).

   Therefore, after making an independent assessment of the Court's jurisdiction, the Court agrees with the parties that complete diversity of citizenship exists under 28 U.S.C § 1332(a)(1). *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The controversy at bar turns on whether the removal was timely under 28 U.S.C. § 1446, and whether a forfeited limited liability company retains the prerequisite citizenship for purposes of diversity jurisdiction.

## LEGAL STANDARD

A defendant may remove a civil action from state to federal court only if the district court possesses original jurisdiction, whether by diversity of citizenship or the presence of a federal question. *WMS, LLC v. Allied Prop. & Cas. Ins.*, 244 F. Supp. 3d 567, 570 (W.D. Tex. 2017). Timeliness of removal is governed by 28 U.S.C. § 1446, which generally requires a defendant to file a notice of removal within 30 days of receiving the initial pleading. 28 U.S.C. § 1446(b)(1). But when the grounds for removal are not evident at the outset, the statute permits a later removal—within 30 days of receiving an "amended pleading, motion, order, or other paper from which removability may first be ascertained." *Id.* § 1446(b)(3). This 30-day period begins only when the basis for removal is unequivocally clear and certain. *Bosky v. Kroger Tex. LP*, 288 F.3d 208, 211 (5th Cir. 2002).

Once removal is challenged, the burden rests with the removing party to establish federal jurisdiction properly exists, and removal was free of procedural defects. *WMS*, 244 F. Supp. 3d at 570. A defective allegation of citizenship may be corrected, but jurisdiction itself cannot be conferred by amendment where it was lacking from the start. *Molina v. Wal-Mart Stores Tex., LP*, 535 F. Supp. 2d 805, 807 (W.D. Tex. Feb. 27, 2008) (citing *D.J. McDuffie, Inc. v. Old Reliable Fire Ins.*, 608 F.2d 145, 147 (5th Cir. 1979)). Doubts about removal must be resolved in favor of remand

ensuring federal courts do not assume jurisdiction where Congress has not clearly assigned it. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 286–87 (5th Cir. 2007); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941) (holding statutes conferring removal jurisdiction are to be strictly construed, and doubts are resolved in favor of remand), *superseded by statute on other grounds*, *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697 (2003).

## ANALYSIS

GB & JB commenced this action in Texas state court on April 16, 2024, seeking recovery for storm-related damage under an insurance policy issued by Century. (Doc. 1-1 at 2). At the time of filing, GB & JB's charter had been forfeited under Texas law, rendering it unable to sue or defend in Texas courts. *Id.* at 35. GB & JB's charter was reinstated on November 12, 2024, and shortly thereafter, Century removed the case to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at 2). GB & JB now seeks remand, arguing Century's removal was untimely under § 1446(b). (Doc. 3).

Century responds that the basis for the case's removability to federal court only became evident on November 12 when GB & JB provided it with a document issued by the Texas Secretary of State showing the reinstatement of GB & JB's operational privileges. (Doc. 9 at 2). Century asserts that upon receiving the notice of reinstatement it timely filed its notice of removal on December 13, 2024. (Docs. 1; 9 at 2).

4

I.      **Capacity and State Forfeiture Law**

The Texas Tax Code provides that a "taxable entity" includes "corporations" and "limited liability companies." TEX. TAX CODE § 171.0002. If a taxable entity, such as a limited liability company, does not pay its franchise tax, the Comptroller may forfeit the company's right to operate in Texas. *Id.* §§ 171.251, 171.2515.

When a corporation forfeits its right to do business, it also forfeits the right to appear in Texas courts—in other words, it "shall be denied the right to sue or defend in the courts of this state." *Id*. § 171.252. The same consequence befalls a limited liability company that falls into delinquency. *See id.* § 171.2515(b) ("The provisions of this subchapter . . . that apply to the forfeiture of corporate privileges apply to the forfeiture of a taxable entity's right to transact business in this state."). Even so, the law does not forever seal the door. The Texas Tax Code allows the corporation a path to cure its delinquency and have its charter privileges reinstated. *Id.* § 171.312. If the corporation meets the requirements of § 171.312—chief among them, the payment of delinquent taxes—the Secretary of State "shall set aside" the forfeiture of the corporation's charter. *Id*. With that act, the Comptroller "shall revive" the privileges of the corporation. *Highline Innovation Inv. P'ship v. Biolert, Ltd.*, No. 21-CV-615-1, 2022 WL 3354775, at *5 (E.D. Tex. Aug. 12, 2022) (citing TEX. TAX CODE § 171.314). And when the State gives back what it once withdrew, the restoration is not merely prospective. Rather, the law relates back, as though the interruption never occurred. *Id.* (citing *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 839 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Just as the same consequence befalls limited liability

5

corporations as it does corporations, the law extends the same hand of revival to both. *Id.* (citing *Marshall Feature Recognition, LLC v. Pepsi-Cola, Co.*, 12-CV-956, 2015 WL 5912672, at *1 (E.D. Tex. Sept. 28, 2015)).

Texas law conditions a corporation's privileges—including access to the courts—upon compliance with the State's tax obligations. When GB & JB, a limited liability company, failed to pay its state franchise tax, the Texas Secretary of State, acting under § 171.309 of the Texas Tax Code, forfeited the company's charter on February 20, 2020. (Doc. 1-1 at 35); *see* TEX. TAX CODE § 171.309. By operation of forfeiture, GB & JB was barred from suing or defending in the courts of Texas, effectively closing the courthouse doors to the company until it returned to good standing. That disability was lifted on November 12, 2024, when the State reinstated GB & JB's corporate privileges, thereby restoring the company's right to sue and defend in Texas courts. (Doc. 9 at 2). And the reinstatement of its privileges relates back and revives whatever rights the company had at the time the suit was filed. *See Marshall Feature Recognition*, 2015 WL 5912672, at *2 (citing *M & M Constr. Co., Inc. v. Great Am. Ins.*, 747 S.W.2d 552, 555 (Tex. App.—Corpus Christi 1988, no writ).

## II.     The Effect of Forfeiture on Federal Jurisdiction

GB & JB contends it fully complied with all requirements to reinstate its charter and corporate privileges, which the Secretary of State restored on November 12, 2024. (Doc. 3 at 7). And because this reinstatement retroactively cures the forfeiture, restoring GB & JB's capacity to sue as if uninterrupted, the temporary forfeiture has no impact on its ability to prosecute this case in state court. *Id.* Further, GB & JB contends the

forfeiture does not affect diversity jurisdiction, as the reinstatement did not alter the citizenship of it or its sole member. *Id.* And as such, the parties remain as diverse now as they were when the lawsuit was filed on April 16, 2024. *Id.*

Century offers a different theory. It contends removal within 30 days of service was not possible because, at the time GB & JB filed suit, it was a forfeited entity under Texas law—lacking the capacity to operate or maintain a lawsuit in state court. (Doc. 9 at 2–4). From this, Century concludes that GB & JB had no legal existence and therefore no state citizenship for purposes of federal diversity jurisdiction as of April 16, 2024, the date the Complaint was filed. *Id.* On this reasoning, Century maintains that diversity could not be ascertained until November 12, 2024, when GB & JB furnished its notice of recertification and reinstated its corporate privileges. *Id.* Only then, Century argues, did the case become removable under 28 U.S.C. § 1446(b)(3), and any attempt at removal before that date would have been premature. *Id.*

Although the precise question presented here is not widely addressed in the case law, the Court is not without persuasive guidance. In *Wild v. Subscription Plus, Inc.*, 292 F.3d 526 (7th Cir. 2002), *cert. denied*, 537 U.S. 1045 (2002), the Seventh Circuit confronted a similar situation. There, the defendant's corporate charter had been revoked prior to the filing of suit and was later reinstated under state law, with retroactive effect to the time of revocation. *Id.* at 528. The court held the revocation did not affect the company's federal citizenship for purposes of diversity jurisdiction. *Id.* at 528–29. What mattered was the corporation's origin—its formation under state law—not its momentary lapse in good standing. *Id.* The court made clear that federal

7

jurisdiction does not ebb and flow with the corporation's operational status under state law. *Id.* at 529 ("We conclude that the revocation of Subscription Plus's corporate charter did not affect its status for diversity purposes.").

The same reasoning was adopted in *Oden Metro Turfing, Inc. v. Continental Casualty Co.*, No. 12-1547, 2012 WL 5423704 (E.D. La. Oct. 10, 2012), *R. & R. adopted*, 2012 WL 5424616, at *5 (E.D. La. Nov. 1, 2012), where the court, relying on *Wild*, reaffirmed a forfeited entity retains juridical identity and, with it, its state citizenship. These decisions underscore a fundamental principle: For purposes of federal diversity jurisdiction, corporate existence is not undone by administrative forfeiture, and citizenship is not erased by temporary incapacity. Federal courts determine jurisdiction not by the shifting procedural penalties of state law, but by the enduring legal structure that defines a party's identity at the time of filing.

This Court sees no cause to deviate from the reasoning set forth in *Wild* and *Oden Metro Turfing*. While Texas may, for its own purposes, suspend a business entity's right to sue or operate within its courts, such a suspension does not extinguish the entity's character for purposes of federal jurisdiction. The reach of § 1332 is defined by federal law and not subject to the procedural conditions of state forfeiture law.

Though the Fifth Circuit has not squarely addressed whether a forfeited Texas limited liability company retains citizenship for diversity purposes, this Court finds the logic of *Wild* instructive and applicable. A limited liability company takes its citizenship from each of its members—a rule rooted **not** in the company's compliance with state formalities, but in its structural composition. Section 1332 contains no provision making

8

federal citizenship contingent upon good standing, operational status, or the grace of a state's taxing authority. These matters may limit a company's capacity to act within state court, but they do not dissolve its existence for purposes of federal subject matter jurisdiction.

Thus, citizenship is a matter of legal origin, not transitory corporate condition. GB & JB, having been formed under the laws of Texas, remained—through forfeiture and restatement—a citizen of Texas for purposes of this Court's jurisdiction. And where the statutory criteria of § 1332 are met, jurisdiction exists, and state-imposed disabilities do not alter that reality.

### III.   Century's "Other Paper" Argument is Unavailing

Century argues the reinstatement document filed on November 12, 2024, constitutes an "other paper" under § 1446(b)(3), thereby reviving its right to remove. (Doc. 9 at 2–4). This interpretation, while not without surface appeal, is incompatible with the structure and logic of the statute.

Section 1446(b)(3) opens a second removal window only when the initial pleading does not disclose grounds for removal, and some later document first renders them ascertainable. But here, the Complaint was removable on its face, as GB & JB was a Texas limited liability company whose sole member was a citizen of Texas. Century, by contrast, is a citizen of another state with its principal place of business elsewhere. That suffices for diversity.

The filing on November 12 did not alter the jurisdictional facts—it simply confirmed them. It was not revelation, but reiteration. Federal law does not require a

business entity to be active or unimpaired under state law to be recognized as a citizen under § 1332. The reinstatement was not an "other paper" disclosing a new basis for removal; it was paperwork confirming what was already evident.

Thus, the November 12 filing did not alter the legal landscape. It merely confirmed, through reinstatement, that GB & JB continued to exist as a Texas company. This was not new information—it was confirmation of a legal status that federal law does not require to be "active" to establish citizenship.

To treat such document as sufficient to trigger a fresh removal window would be to sanction delay and invite manipulation of the removal clock. A defendant cannot stall removal while awaiting the procedural convenience of a paper trail that merely recites what is already known. The 30-day clock began when Century was served with the Complaint. It did not pause for clarification, and it did not restart upon confirmation. The 30-day removal period began upon service of the original complaint, and Century's delay cannot be excused under § 1446(b)(3).

## Conclusion

For the forgoing reasons, the Court concludes Century's removal was untimely. The reinstatement document filed on November 12, 2024, does not constitute an "other paper" under § 1446(b)(3) because it did not newly reveal facts supporting removal; it merely confirmed what was already legally and jurisdictionally true.

It is therefore **ORDERED** that GB & JB's Motion to Remand is **GRANTED** and this case is **REMANDED** to the 112th Judicial District Court of Pecos County, Texas. (Doc. 3).

The Clerk of the Court is **DIRECTED** to **CLOSE** the case.

It is so **ORDERED**.

SIGNED this 9th day of April, 2025.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE